IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                                                                                   No. CR 24-1347 JB

JESUS SALAS,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiff's United States' Opposed Motion for Reconsideration of Memorandum Opinion and Order, filed August 4, 2025 (Doc. 42)("Motion to Reconsider").  The Court has set the sentencing for October 22, 2025.  The primary issues are (i) whether the Court should reconsider its conclusion -- made in the Court's Memorandum Opinion and Order, filed August 1, 2025 (Doc. 41)("MOO") -- that the Plaintiff United States of America does not prove, by a preponderance of the evidence, that Defendant Jesus Salas possesses a bomb on February 7, 2024 ("February Bombing"), and Salas, therefore, is not subject to the enhancements in U.S.S.G. § 2K2.1(b)(1)(A) and § 2K2.1(b)(3)(B); and (ii) if the United States proves Salas' constructive possession of the bomb, whether that constructive possession is relevant conduct under U.S.S.G. § 1B1.2, such that it may play a role in the Court's calculation of Salas' Guidelines sentence.  The Court concludes: (i) that it will reconsider its determination of possession under Application Note 5 to § 2K2.1, because the United States provides more information about Salas' relationship with the co-conspirator and the bomb's origins, at invitation by the Court; (ii) that the United States proves, by a preponderance of the evidence, that Salas possesses a bomb during the February Bombing, because the United States provides evidence previously unconsidered that Salas has both the power and intent to exercise control over the bomb through his co-conspirator, whom Salas has an close relationship with sufficient to guide the

bomb's destiny; and (iii) that the United States proves Salas' constructive possession of the destructive device during the February Bombing is relevant conduct under U.S.S.G. § 1B1.2, such that it may play a role in the Court's calculation of Salas' Guidelines sentence. The applicable offense level is 29, the applicable criminal history category is IV, and the applicable Guidelines range is 121 to 151 months.

## FACTUAL BACKGROUND

The Court's MOO set forths the factual background. has already been set forth. The Court thus limits its findings of fact here to those relevant to this Motion to Reconsider. When resolving factual Objections, the Court must determine whether the United States has met its burden of proving disputed facts by a preponderance of the evidence. See United States v. Olsen, 519 F.3d 1096, 1105 (10th Cir. 2008). In evaluating whether the United States has met its burden, "sentencing courts may consider hearsay evidence provided that the evidence has sufficient indicia of reliability." United States v. Dazey, 403 F.3d 1147, 1177 n.7 (10th Cir. 2005). See U.S.S.G. § 6A1.3. "This is not a high standard, for it requires only 'minimal indicia of reliability.'" United States v. Ayon, 226 F. App'x 834, 840 (10th Cir. 2007)(unpublished)(quoting United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995)).[1]

---

[1] United States v. Ayon, 226 F. App'x 834 (10th Cir. 2007), is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit states:

> In this circuit, unpublished orders are not binding precedent . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United

The Court finds that on February 7, 2024, Salas drives an SUV when his passenger, Draco, ignites an improvised bomb and throws it from the SUV, after which the bomb explodes. See Presentence Investigation Report ¶ 25, at 6, filed May 26, 2025 (Doc. 31)("PSR"). Next, on March 18, 2024, police officers respond to a 911 call alleging that Salas' girlfriend, Kristy Tenorio, had shot herself. See PSR ¶ 13, at 4. At the scene, Police find two firearms on the ground next to the car, and Salas later admits to possessing both firearms. See PSR 14, at 4. The police arrest Salas, he is federally charged, and he pleads guilty to violating 18 U.S.C. § 922(g)(1). See PSR ¶ 2, at 3. While in jail, after March 18, 2024, Salas asks a fellow inmate to detonate a homemade bomb at his girlfriend's house to keep her from testifying against him. See PSR ¶ 21, at 5. Unbeknownst to Salas the inmate is a confidential informant. See PSR ¶ 21, at 5. Salas describes the February Bombing to informant and draws a diagram of the destructive device, explain that he used a similar bomb during the February Bombing. See PSR ¶ 26, at 6-7. See Motion to Reconsider ¶ 1, at 4. The February Bombing is in response to actions taken by a rival gang member, known as "Jawbreaker," "firing shots at [Salas'] vehicle while his son was inside." Motion to Reconsider ¶ 3, at 4. Draco and Salas' are members of the same gang. See Motion to Reconsider ¶ 2, at 4. In jail, Draco and Salas are together often. See Motion to Reconsider ¶ 2, at 4. The PSR considers the February, 2024, bombing as relevant conduct to the March offense of Felon in Possession of a Firearm, and adds 4 levels to Salas' offense level pursuant to (i) § 2K2.1(b)(1)(A), which adds 2 levels when the offense involves three firearms; and (ii) § 2K2.1(b)(3)(B), which adds 2 levels when the offense involves a destructive device. See PSR ¶¶ 32-33, at 7.

---

States v. Ayon; United States v. Beierle, 716 F. App'x 782 (10th Cir. 2017); and United States v. Shannon, 809 F. App'x 515 (10th Cir. 2020) have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

**PROCEDURAL BACKGROUND**

The United States files the Motion to Reconsider following the Court's MOO sustaining Salas' Objections, filed July 10, 2025 (Doc. 36)("Objections"), to the PSR. The Court sustains Salas' Objections, because the Court concludes Salas is not in possession of the bomb on February 7, 2024. See MOO ¶ 2, at 4. In the original briefing, the United States does not allege that Salas possesses the bomb, so the Court sua sponte considers whether Salas has constructive possession of the bomb. See MOO ¶ 2, at 5. The Court determines that the United States does not show by a preponderance of the evidence Salas is in constructive possession of the bomb, because "the PSR does not include details suggesting that Salas intended to exercise [] control" over the bomb. MOO ¶ 3, at 6. The United States does not persuade the Court that Salas has the power or physical capability to exercises control over the bomb, which is a requirement for finding constructive possession. See MOO ¶ 3, at 6. Having concluded, the United States does not show Salas is in constructive possession of the bomb, the Court determines neither sentencing enhancement, under U.S.S.G. § 2K2.1(b)(1)(A) or § 2K2.1(b)(3)(B), is appropriate. See MOO ¶ 1, at 1. The enhancements are not appropriate, because Application Note 5 to § 2K2.1 confirms that possession, either actual or constructive, is a predicate for applying the enhancements. See MOO ¶ 1, at 5 ("As the application note confirms, possessing multiple firearms or possessing a destructive device is the enhancements' predicate."). Because Salas never possesses the destructive device, the Court does not address Salas' argument that the February Bombing is not relevant conduct under U.S.S.G § 1B1.3 for the enhancement of Salas' Felon in Possession of a Firearm and Ammunition charge. See MOO ¶ 1, at 7 ("The Court, therefore, does not address Salas' relevant-conduct argument.").

In the Motion to Reconsider, the United States provides, at invitation by the Court, more

information about Salas' relationship with the co-conspirator and the bomb's origins. See MOO ¶ 3, at 6 (stating that constructive possession could be found if the United States provides "[a]dditional detail about the two men's relationship and the bomb's origins," because that could show "Salas made the bomb and planned the attack."). The United States gives additional details about: (i) Salas's knowledge of the destructive device, including diagrams drawn by Salas that match the bomb from the February incident, see Motion to Reconsider ¶ 2, at 4; (ii) Salas' relationship with co-conspirator, known as "Draco," including the two men's participation in the Juaritos Mara Villa gang as well as jail phone calls of Salas' discussing his relationship with Draco, Motion to Reconsider ¶¶ 3-4, at 6; and (iii) Salas' motivation to commit the February Bombing, because the February target is a member of a rival gang whom had previously endangered Salas' son, see Motion to Reconsider ¶ 4, at 6-7.

In the Salas' Response, filed August 22, 2025 (Doc. 47)("Salas' Response"), Salas: (i) argues that the Motion to Reconsider is not warranted, because "there has been no intervening change in the law regarding constructive possession, no new evidence available, and there has certainly been no clear error or manifest injustice in the Court's careful application of the law," Salas' Response ¶ 1, at 1; (ii) reasserts that the February Bombing is not relevant conduct to be considered in the sentencing enhancements, see Salas' Response ¶ 1, at 2; and (iii) asserts that Salas had neither "the power *or* subjective intent to control the alleged destructive device" required to find constructive possession, Salas' Response ¶ 1, at 3. Lastly, Salas does not reassert any other objection from the Objections. Nor does Salas object with the Court's analysis in the MOO, including the Court's determination that the other objections raised by Salas are not in dispute. See MOO ¶ 1, at 2 n.1.[2]

---

[2] Salas does, in a footnote, argue that "report of interviews from unidentified jailhouse

On September 26, 2025, the United States files its Supplemental Brief after receiving a Laboratory Report from the Bureau of Alcohol, Tobacco, Firearms, and Explosive Forensic Science laboratory ("DNA Report"). See Supplemental Brief ¶ 1, at 1 (Doc. 51). The DNA Report contains results from tests performed on various portions of the destructive device collected by agents from the February bombing. See Supplemental Brief ¶ 1, at 1. The results show "that a male DNA profile consistent with a single contributor was detected on swabs of tape backing used on a portion of the [destructive] device." Supplemental Brief ¶ 2, at 1. Moreover, the "'DNA profile is at least a trillion times more likely if it originated form Jesus Salas . . . than if it originated from an unrelated, unknown individual.'" Supplemental Brief ¶ 2, 1-2 (quoting DNA Report at 5). The United States argues the DNA evidence supports a finding that Salas not only constructively possessed the bomb, but he actually possessed it. See Supplemental Brief ¶ 1, at 2. Salas in the Response to Supplement, argues "DNA on an item, without more, does not establish that the item was directly handled by the individual whose DNA was detected." Supplemental Response ¶ 1, at 1.

## LAW REGARDING MOTIONS TO RECONSIDER

"Motions to reconsider are proper in criminal cases even though the Federal Rules of Criminal Procedure do not specifically provide for them." United States v. Christy, 739 F.3d 534,

---

informants is dubious." Salas' Response ¶ 1, at 3 n.2. This is similar to Salas' argument in the Objections that "allegations made by [] the unnamed and unconfronted informant in this case lack sufficient corroboration to establish by a preponderance of the evidence that Mr. Salas was involved in the February 7 incident. Objections ¶ 1, at 3. Salas' does not, however, reassert this position, instead, urging the Court to treat the allegations "with a heightened sense of doubt." Salas' Response ¶ 1, at 3 n.2. In addition to the minimal indicia of reliability comment in the MOO, the Court notes that Salas concedes the reliability of the jailhouse informant. Salas accepts the two-level sentencing enhancement for obstruction of justice, see PSR ¶ 37, at 7, which is added because of information from the same jailhouse informant providing information about the March solicitation.

539 (10th Cir. 2014). See United States v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010)(Easterbrook, C.J.)("None of the Rules of Criminal Procedure authorizes a generic motion to reconsider; the criminal rules lack a counterpart to the motions authorized by Fed. R. Civ. P. 50(b), 52(b), or 59, though they do authorize some post-trial motions . . . that have features in common with motions under the civil rules."). The United States Court of Appeals for the Tenth Circuit has held that criminal motions to reconsider are proper, because a "district court should have the opportunity to correct alleged errors in its dispositions." United States v. Christy, 739 F.3d at 539. The authority to reconsider, according to the Tenth Circuit, "comes from the common law." United States v. Warren, 22 F.4th 917, 922 (10th Cir. 2022)(citing United States v. Rollins, 607 F.3d at 502).

This authority, however, is not without limits. A district court may grant a motion to reconsider "when the court has misapprehended the facts, a party's position, or the law." United States v. Christy, 739 F.3d at 539 (citing Servants of Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000)). Specific grounds for reconsideration include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." Servants of Paraclete v. Does, 204 F.3d at 1012. Motions to reconsider, however, "should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." United States v. Christy, 739 F.3d at 539.

The Tenth Circuit has applied the law regarding motions to reconsider in civil cases to the criminal context. See United States v. Christy, 739 F.3d at 539-40; United States v. Huff, 782 F.3d 1221, 1223-24 (10th Cir. 2015). "In the criminal context, courts ordinarily apply the same standards to motions to reconsider as those used in civil cases." United States v. Christy, 810 F. Supp. 2d 1219, 1249 (D.N.M. 2011)(Browning, J.), aff'd by, United States v. Christy, 739 F.3d 534 (10th Cir. 2014). See United States v. Rollins, 607 F.3d at 502 (stating that the Supreme Court

of the United States has "concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits"); United States v. Matlack, No. CR 09-0531, 2010 WL 2682110, at *1 (D. Colo. July 1, 2010)(Daniel, C.J.)(stating that other district courts in the Tenth Circuit have relied on the standards for evaluating a motion to reconsider in the civil context when addressing motions to reconsider in the criminal context), declined to follow on other grounds by United States v. Games-Perez, 667 F.3d 1136 (10th Cir. 2012); United States v. West, No. 01-40122, 2002 WL 1334870, at *1 (D. Kan. May 9, 2002)(Crow, J.)("Rarely do parties in criminal proceedings file motions to reconsider rulings on pretrial motions. This court believes that the standards for evaluating a motion to reconsider in the civil context are relevant for evaluating a motion to reconsider in a criminal case."); United States v. Ibarra, 502 U.S. 1 (1991); United States v. Dieter, 429 U.S. 6 (1976); United States v. Healy, 376 U.S. 75 (1964).

Accordingly, the Tenth Circuit has applied the civil standard, as it announced in Servants of Paraclete v. Does, 204 F.3d at 1012, in reconsidering a motion to suppress in the criminal context. In United States v. Huff, the Tenth Circuit explains:

> We have held that a motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Specific situations where circumstances may warrant reconsideration include "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id.* "A motion to reconsider is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Voelkel v. Gen. Motors Corp.*, 846 F. Supp. 1482, 1483 (D. Kan. 1994). We have specifically held that "[a] motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).

United States v. Huff, 782 F.3d at 1224. The Court thus will use the same test that it has developed for motions to reconsider in the civil context for motions to reconsider in criminal cases. See

Anderson Living Trust v. WPX Energy Prod., LLC, 312 F.R.D. 620, 642-49 (D.N.M. 2015)(Browning, J.).

## LAW REGARDING CONSTRUCTIVE POSSESSION OF FIREARMS

"To establish possession, the government must show the defendant actually or constructively possessed the guns." United States v. Gambino-Zavala, 539 F.3d 1221, 1229 (10th Cir. 2008). "Actual possession exists when a person has direct physical control over a thing." United States v. Johnson, 46 F.4th 1183, 1187 (10th Cir. 2022)(quoting United States v. Benford, 875 F.3d 1007, 1020 (10th Cir. 2017)). "Constructive possession exists when a person not in actual possession knowingly has the power and intent at a given time to exercise dominion or control over an object." United States v. Little, 829 F.3d 1177, 1182 (10th Cir. 2016)("Little").[3] See United States v. Trujillo, No. 21-1323, 2022 WL 17661046, at *2 (10th Cir. Dec. 14, 2022)("To prove constructive possession for purposes of this sentencing enhancement, the government needed to show by a preponderance of the evidence that Trujillo had 'both the power to control [the gun] and intent to exercise that control.'")(quoting United States v. Samora, 954 F.3d 1286, 1290 (10th Cir. 2020)); United States v. Beierle, 716 F. App'x 782, 790 (10th Cir. 2017)(unpublished)(applying Little's constructive-possession analysis to U.S.S.G. § 2K2.1(b)(1)(A)). "[A] defendant may exercise this ability or power personally or through others

---

[3]In Little, the Tenth Circuit explains that the Supreme Court's opinion in Henderson v. United States, 575 U.S. 622 (2015), "changes the law of constructive possession in our circuit." Little, 829 F.3d at 1182. In Henderson v. United States, the Supreme Court "squarely held that constructive possession requires both power to control an object and intent to exercise that control." Little, 829 F.3d at 1182 (citing Henderson v. United States, 575 U.S. at 626). In Little, therefore, the Tenth Circuit overruled its earlier holding in United States v. Colonna, 360 F.3d 1169 (10th Cir. 2004), which holds that, for purposes of constructive possession, "[i]t is not necessary to show that the defendant intended to exercise . . . dominion or control." United States v. Colonna, 360 F.3d at 1179. See Little, 829 F.3d at 1182.

who have an adequate tie to the defendant." United States v. King, 632 F.3d 646, 652 (10th Cir. 2011)(citing United States v. Al–Rekabi, 454 F.3d 1113, 1118 (10th Cir.2006)).  "When an object can be attributed to more than one person, there must be a nexus between the defendant and the object supported by 'reasonable inferences from direct or circumstantial evidence.'"  United States v. Brown, 85 F.4th 1291, 1296 (10th Cir. 2023)(quoting United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996)).  Whether exercised individually or jointly, and whether direct or through another person, the ability to control the object remains the "bedrock of constructive possession."  United States v. Al–Rekabi, 454 F.3d at 1120.

## ANALYSIS

The Court begins its analysis by determining whether the Court should reconsider the conclusion it made in the MOO, previously filed by the Court, that the United States does not prove, by a preponderance of the evidence, that Salas possesses a bomb on February 7, 2024, and Salas, therefore, is not subject to the enhancements in U.S.S.G. § 2K2.1(b)(1)(A) and § 2K2.1(b)(3)(B).  Second, after determining that reconsideration is appropriate, the Court analyzes whether Salas is in constructive possession of the destructive device, considering the evidence presented by the United States.  Finally, the Court considers whether that constructive possession is relevant conduct under U.S.S.G. § 1B1.2, such that it may play a role in the Court's calculation of Salas' Guidelines sentence.

**I.   THE COURT CONCLUDES RECONSIDERATION IS APPROPRIATE, TO PROVIDE BOTH PARTIES AN OPPORTUNITY TO BE HEARD ON THE ISSUE.**

The Court reconsiders its sua sponte constructive possession analysis in light of the United States' additional evidence.  In the Objections, Salas advances arguments challenging his involvement with February Bombing, because the jailhouse informant testimony is unreliable. Salas does not, however, raise arguments related to his actual or constructive possession of the

destructive device.  Consequently, neither Salas nor the United States "had an opportunity to be heard on [the constructive possession] argument."  Motion to Reconsider ¶ 2, at 2.  Without arguments from either party, the Court's analysis in the MOO is limited, but the Court notes that the Court's conclusion may change based on certain missing details.  The United States provides those missing details in the Motion to Reconsider.  Thus, the Court therefore deems reconsideration appropriate, as it is clarifying -- not revisiting issues or arguments already addressed -- an aspect of the Court's original analysis.

II.     **THE COURT CONCLUDES SALAS HAS CONSTRUCTIVE POSSESSION, BECAUSE OF HIS ABILITY TO CONTROL THE BOMB THROUGH DRACO.**

Having concluded reconsideration is appropriate, the Court now considers whether Salas has possession of the destructive device during the February Bombing.  In the prior MOO, the Court concludes that the United States does not prove, by a preponderance of the evidence, that Salas possesses a bomb during the February Bombing, and Salas, therefore, is not subject to the enhancements in U.S.S.G. § 2K2.1(b)(1)(A) and § 2K2.1(b)(3)(B).  Constructive possession of an item requires "both power to control an object and the intent to exercise that control."  United States v. Little, 829 F.3d at 1182.  The Court explicitly provides, Salas could be found in constructive possession if more information about Salas and Draco's relationship is provided.  Salas' arguments that the government fails to prove, by a preponderance of the evidence, that Salas has the subjective intent and power to control the destructive device is unpersuasive.

A.     **THE CIRCUMSTANTIAL EVIDENCE SUPPORTS A FINDING THAT SALAS INTENDS TO EXERT CONTROL OVER THE BOMB.**

First, the Court concludes that the United States has proven, by a preponderance of the evidence, that Salas possessed the subjective intent to control the destructive device during the February Bombing.  Having already found in its prior MOO that Salas was present in the vehicle

when Draco deployed the device, the remaining question is whether Salas intended to control it. "Intent is most often established through circumstantial evidence," United States v. Shannon, 809 F. App'x 515, 520 (10th Cir. 2020)(unpublished)(citing United States v. Camick, 796 F.3d 1206, 1220 (10th Cir. 2015)), and may be inferred from whether the defendant exercised exclusive control over the area where the item was found or, if control was joint, whether there existed "some connection or nexus between the defendant and the firearm." United States v. Benford, 875 F.3d 1007, 1019 (10th Cir. 2017). Although both Draco and Salas had access to the device, the evidence establishes a sufficient nexus between Salas and the February bomb. In March, Salas admitted soliciting a confidential informant to bomb his girlfriend's house to prevent her from testifying against him, stating that "she will know it's from him." Motion to Reconsider (Exhibit 1 ¶ 3, at 1)("CI Narrative"). This admission demonstrates Salas's familiarity with, and prior use of, explosive devices. The informant further reported that one of the two bombs Salas could make for his girlfriend's home is "similar to the one he used at [the February Bombing]." CI Narrative ¶ 3, at 1. While Salas challenges the credibility of the "jailhouse informant" regarding the February Bombing, he concedes the same informant's account of the March solicitation to bomb his girlfriend's home, which the Court views as corroborative of the informant's overall reliability. In addition, Salas admitted that the February Bombing was "in response to a San Jose gang member named 'Jawbreaker' firing shots at Salas' vehicle almost hitting his son." CI Narrative ¶ 2, at 1. This statement is corroborated by recordings made while in custody. See Motion to Reconsider ¶ 3, at 4-5 ("'I'm the one, I, I'm the one shot, the, I'm the one shot the *fusier*, you know what I mean? . . . . At Jawbreaker.'" (quoting Exhibit 6 at 0:38-0:44). Although Draco belonged to the same gang, the circumstantial evidence indicates that the February Bombing was retaliation for conduct directed at Salas personally. Accordingly, the Court finds that the record supports a

finding that Salas intended to control the destructive device, because using bombs were his pattern, he confessed to using one during the February Bombing, he was driving the vehicle when Draco deployed it, and his motive -- to retaliate for the endangerment of his son -- underscores his dominion over the device.

B. **THE CIRCUMSTANTIAL EVIDENCE SUPPORTS A FINDING THAT SALAS HAS POWER TO CONTROL THE BOMB.**

Second, the Court concludes United States does prove, by a preponderance of the evidence, that Salas has the power to control the destructive device during the February bombing. Power is the ability "to exercise dominion or control" over the firearm. United States v. King, 632 F.3d 646, 653 (10th Cir. 2011). That control over the firearm can be show "circumstantially by the defendant's special relationship to those who directly control the [firearm.]" United States v. Ramos-Rascon, 8 F.3d 704, 712 (9th Cir. 1993).

Here, Salas and Draco are a part of the same gang, Salas is driving Draco during the February bombing, they maintained a close relationship while in jail, and as discussed previously Salas had the motive to commit the February Bombing. The logical inference is that during the February Bombing Draco is helping Salas retaliate. The evidence suggests that, even assuming Salas never touched the destructive device, at any point he could "guide the destiny" of the device towards Jawbreaker's or another gang members home. See United States v. Massey, 687 F.2d 1348, 1354 (10th Cir. 1982)(stating that a defendant may have constructive possession over narcotics when he or she has "some appreciable ability to guide the destiny of the drug").

III. **THE FEBURARY BOMBING IS RELATED CONDUCT TO THE FELON IN POSSESSION CHARGE FOR PURPOSES OF § 1B1.3(a)(1)(A).**

The Court concludes that Salas's February 2024 conduct is part of the same course of conduct as the March 2024 offense. The "same-course-of-conduct standard looks to whether the

defendant repeats the same type of criminal activity over time, but does not require that acts be connected together by common participants or by an overall scheme." United States v. Joseph, 108 F.4th 1273, 1286 (10th Cir. 2024)(quoting United States v. Garcia, 946 F.3d at 1203). The Application Note to § 1B1.3 identifies three factors that guide this determination: "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3 Application Note 5(B)(ii). "When one of the above factors is absent, a stronger presence of at least one of the other factors is required." U.S.S.G. § 1B1.3 Application Note 5(B)(ii).

As to similarity, both incidents involve unlawful possession or use of firearms as defined under 18 U.S.C. § 921(a)(3).[4] The February device -- a bomb -- qualifies as a "firearm" under the statute, just as the guns Salas possessed in March do. See 18 U.S.C. § 921(a)(4). Thus, even though the specific weapons differ, the nature of the prohibited conduct is the same: Salas, a convicted felon, unlawfully possessed destructive devices within the meaning of § 922(g). The Tenth Circuit has recognized that "additional instances of illegal firearm possession may be found to be 'not merely similar but identical' . . . to the offense of conviction -- without the need for a sentencing court to engage in a detailed analysis of the factual circumstances of each possession." United States v. Garcia, 946 F.3d at 1204-05 (quoting United States v. Windle, 74 F.3d 997, 1000 (10th Cir. 1996)). Because both the February and March incidents involve unlawful firearm possession by the same defendant, the similarity factor weighs heavily toward a same-course-of-

---

[4] 18 U.S.C § 921(a)(3) defines a firearm as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm." 18 U.S.C § 921(a)(3). Section 921(a)(4) goes on to describe a destructive device as any explosive bomb, grenade, or device similar to any of the listed devices. See 18 U.S.C § 921(a)(4).

conduct finding.

As to regularity and temporal proximity, both also support the same conclusion. The incidents occurred roughly one month apart, a period the Tenth Circuit has characterized as a "relatively short period of time." See United States v. Windle, 74 F.3d 997, 1000-01 (10th Cir. 1996)(characterizing a "four to five month period" as a "relatively short period of time"). Courts have found that even two instances of unlawful possession can establish sufficient regularity. See United States v. Svacina, 137 F.3d 1179, 1185 (10th Cir. 1998)(suggesting that, when there are "two instances of conduct," "some regularity of conduct exists"). See also United States v. Rourke, No. 15-10085-02-JWB, 2021 WL 3129599 *59 (D. Kan. July 23, 2021)(affirming the district court's application of § 1B1.3(a)(2) when the defendant possesses a firearm illegally on two occasions). Two instances of conduct, however, is not a bright-line rule. See United States v. Garcia, 946 F.3d at 1205 ("We need not opine on whether Svacina's language actually stands for the proposition that two incidents of unlawful conduct, standing alone, can display sufficient regularity."). Here, Salas's repeated possession of illegal firearms -- first a bomb, then guns, and later an attempt to use another bomb in the obstruction of justice -- demonstrates a pattern of conduct rather than isolated acts. Using illegal weapons appears to be Salas' modus operandi, further underscoring the regularity and continuity of his behavior.

Because all three factors, similarity, regularity, and temporal proximity, support the conclusion that the February Bombing and March incident are part of the same course of conduct, the Court holds that the February offense is relevant conduct to the March 2024 offense. Accordingly, the presentence report properly considers the February incident as relevant conduct for purposes of applying the firearms enhancement. The PSR, therefore, permissibly applies the two firearms enhancements that stem from the February, 2024, offense. Accordingly, the Court

overrules Salas' Objections.

**IT IS ORDERED** that: (i) the Court overrules Defendant's Objections to Presentence Report, filed July 10, 2025 (Doc. 36); (ii) the § 2K2.1(b)(1)(A) and § 2K2.1(b)(3)(B) enhancements are applicable; (iii) the applicable offense level is 29, and the applicable criminal history category is IV; and (iv) the applicable Guidelines range is 121 to 151 months.

                                                                                         UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan Ellison
  United States Attorney
Stephen R. Kotz
Maria Elena Stiteler
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Gene Allen Franco
  Assistant Federal Public Defender
Office of the Federal Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*